IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:13-CV-259-FL

| | |
|---|---|
| PAMELA ALLEN GAMMONS, )<br>)<br>Plaintiff, )<br>) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| )<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | |

In this action, plaintiff Pamela Allen Gammons ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that she is not disabled.[1] The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 22, 30). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Public D.E. dated 22 October 2014). The motions have been fully briefed.[2] For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

[2] Each party filed a memorandum in support of its motion. (D.E. 23, 31).

I.  BACKGROUND

   A.  Case History

Plaintiff filed applications for DIB and SSI on 22 July 2010 and 27 August 2010, respectively, alleging a disability onset date of 30 November 2008. Transcript of Proceedings ("Tr.") 155. The applications were denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 155. On 19 June 2012, a hearing was held before an Administrative Law Judge ("ALJ"), at which plaintiff and a vocational expert testified. Tr. 155, 179-217. The ALJ issued a decision denying plaintiff's claim on 27 July 2012. Tr. 155-65. Plaintiff timely requested review by the Appeals Council. Tr. 150-51. The Appeals Council admitted additional evidence (Tr. 915-940),[3] but on 9 October 2013 denied the request for review (Tr. 1-6). At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review on 5 December 2013, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). (*See* Compl. (D.E. 1)).

   B.  Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

---

[3] The Appeals Council considered other evidence submitted by plaintiff as well, but returned it to her because the records concerned the time period following the ALJ's decision. Tr. 2.

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings ["Listings"] in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.* §§ 404.1523, 416.923.

### C.   Findings of the ALJ

Plaintiff was 32 years old on the alleged onset date of disability and 39 years old on the date of the hearing. Tr. 163 ¶ 7. She has a G.E.D. and past relevant work as a corrections officer, vinyl siding business owner, truck driver, and home care attendant. Tr. 163 ¶¶ 6, 8.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 157 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: depression[4] and a stomach disorder. Tr. 157 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals one of the Listings. Tr. 158 ¶ 4.

---

[4] Plaintiff's depression appears to be reflective of her family psychiatric history, which one psychiatrist described as "just full of chaos." Tr. 828. As reported by plaintiff to the psychiatrist, the history includes mental and physical abuse by her mother, leading plaintiff to attempt to hang herself at age 8; sexual assaults against her as a child; her mother's attempt to sell her at age 13; her marriage to abusive husbands; and the killing of her father. Tr. 828.

The ALJ next determined that plaintiff had the RFC to perform light work—that is, to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and to stand, walk, and sit for 6 hours in an 8-hour day.[5] Tr. 16 ¶ 5; *see* 20 C.F.R. §§ 404.1567(b), 416.967(b). He further found that plaintiff was subject to the following limitations:

> The claimant cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, and can occasionally crawl. She must avoid dangerous, moving machinery, and unprotected heights. The claimant should be given the option to sit or stand at will. She is limited to simple, routine, repetitive tasks with no more than occasional changes in her tasks, and no more than occasional interaction with coworkers.

Tr. 159 ¶ 5.

At step four, the ALJ found that plaintiff was unable to perform her past relevant work. Tr. 163 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of hand packer, produce inspector, and garment folder. Tr. 163-64 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 164 ¶ 11.

### D. Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision

---

[5] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," http://www.oalj.dol.gov/libdot.htm (last visited 23 Dec. 2014). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1–2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131

6
Case 7:13-cv-00259-FL   Document 35   Filed 12/24/14   Page 6 of 17

F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff argues that the case should be remanded for the award of benefits[6] on the grounds that the ALJ erred by not giving controlling weight to the opinion of her treating psychiatrist, David A. Joseph, M.D.; not properly evaluating other medical evidence regarding her mental impairments; and not relying on testimony of the vocational expert, based on hypotheticals from her counsel, that no jobs were available to her. Because the first two issues are dispositive of this appeal, the court limits its discussion to them.

## III. DISCUSSION

### A. ALJ's Evaluation of Dr. Joseph's Opinion

#### 1. Applicable Standards

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D. W.Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

---

[6] In her motion, plaintiff requested in the alternative remand for a new hearing (*see* Mot. 1), but abandoned that alternative request for relief in her memorandum (*see* Pl.'s Mem. 31). As discussed, the court finds that remand is the appropriate relief under the circumstances presented.

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [i.e., giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion."). Where there are multiple opinions from a single source, an ALJ does not necessarily have to discuss each opinion separately to make clear the weight given it and the underlying reasons. *See* Soc. Sec. R. 96-2p, 1996 WL 374188, at *2.

The opinions of physicians and psychologists on issues reserved to the Commissioner, that is, legal conclusions, are not entitled to special weight because of their source, including statements that the claimant is disabled or unable to work. 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. R. 96-5p, 1996 WL 374183, at *3 (2 July 1996).

### 2. ALJ's Evaluation

In a letter addressed to "To Whom It May Concern," dated 12 July 2010, Dr. Joseph stated the following opinion regarding plaintiff:

> I am the psychiatrist treating Pamela Gammons. I diagnosed her with Bipolar Illness and Post Traumatic Stress Disorder. She is, in my opinion, disabled and unable to work. The severe mood swings are difficult to treat and she has been chronically suicidal.
>
> I am continuing to work with her to find a medication to help stabilize her mood swings.

Tr. 632.

The ALJ accurately summarized Dr. Joseph's opinion as follows:

> In July 2010, the claimant's psychiatrist, Dr. David Joseph, stated that the claimant had been diagnosed with bipolar disorder and post-traumatic stress disorder, and that she was disabled and unable to work, due to the fact that her severe mood swings were difficult to treat, and she was chronically suicidal. (Exhibit 7F/2).

Tr. 162 ¶ 5.

He stated that he was giving "no weight"—not simply limited weight—to Dr. Joseph's opinion. Tr. 162 ¶ 5. The ALJ gave five reasons for his determination, numbered here in brackets for ease of reference:

> [1] The issue of disability is one reserved for the Commissioner. Nonetheless, this opinion has been considered, but has been given no weight. [2] Dr. Joseph rendered this opinion after seeing the claimant for four therapy sessions. [3] As of April 2010, the claimant was not taking any mental health medication. [4]

> Additionally, through July 2010, the claimant's stressors appear to be from outside stressors, including the anniversary of her father's death and the impending sentencing of her son to prison. [5] In June and July 2010, Dr. Joseph only rated that the claimant was suffering from moderate signs of depression.

Tr. 162-63 ¶ 5.

Plaintiff does not challenge three of the reasons given by the ALJ—namely, that the disability issue is reserved to the Commissioner, plaintiff had significant outside stressors around July 2010, and Dr. Joseph found plaintiff to have only moderate signs of depression in June and July 2010. These reasons appear to be proper. Reservation of the issue of disability to the Commissioner is, as noted, expressly provided for in the Regulations. *See* 20 C.F.R. §§ 404.1527(e)(1), (3), 416.927(e)(1), (3); Soc. Sec. R. 96–5p, 1996 WL 374183, at *3. Substantial evidence of record appears to support the other two reasons. In his progress note on his 28 June 2010 visit with plaintiff, Dr. Joseph did find plaintiff to have moderate depression and discussed plaintiff's stress from her son's being charged with kidnapping and rape of a child. Tr. 635; *see also* Tr. 162 ¶ 5. In the progress note of the 12 July 2010 visit, Dr. Joseph did again find plaintiff to have moderate depression, and mentioned plaintiff's report that her son faced 20 years in prison. Tr. 634; *see also* Tr. 162 ¶ 5.

Plaintiff does, however, challenge the remaining two reasons given by the ALJ—namely, that Dr. Joseph gave his opinions after four therapy sessions with plaintiff and that as of April 2010 plaintiff was taking no mental health medication. Plaintiff's challenge has merit.

With respect to the four sessions finding, it is literally true that Dr. Joseph rendered his opinion after a succession of four therapy sessions with plaintiff between April and July 2010, the reports of which appear in the record. Tr. 633-38. The clear implication is that Dr. Joseph's treating relationship with plaintiff consisted solely of these sessions spanning only four months.

In fact, though, other evidence of record shows that Dr. Joseph's treating relationship with plaintiff extended back to at least 2008. For example, the note of an office visit by plaintiff with her primary care provider, Batish Family Medicine ("Batish"), on 28 May 2008 states, "Here for labs ordered by Dr. David Joseph at Southeastern." Tr. 505 (capitalization modified). In addition, the note on an office visit by plaintiff at Trinity Wellness Center on 8 August 2011 states under the heading "Past Psychiatric History": "previous treatment— receiving therapy and medication management[.] In Jan 2011 had to stop due to loss of Insurance, w[as] [seen] there since 2008 by Dr. David Joseph." Tr. 803. The report on plaintiff's admission on 19 January 2012 to New Hanover Regional Medical Center for psychiatric treatment states her report that "[s]he saw Dr. Joseph in the past, she says for about six years, and he had diagnosed her with depression, anxiety, posttraumatic stress disorder, and bipolar affective disorder. He used multiple different medications." Tr. 827. Nowhere in his decision does the ALJ address plaintiff's treatment history with Dr. Joseph predating 2010.[7]

Admittedly, there is no documentation in the record beyond that cited of Dr. Joseph's treatment of plaintiff prior to the March 2010 therapy session, such as progress notes from that period on any therapy or medication management sessions. Nonetheless, given the ALJ's reliance on the low number of sessions over a four-month period in discrediting Dr. Joseph's opinion, it was incumbent upon him to explain his assessment of the evidence that Dr. Joseph has a much longer relationship with plaintiff. The need for such an explanation is heightened by the fact that he gave no weight at all to Dr. Joseph's opinion; the substantial disparity between the low number of sessions during and brevity of the period of treatment relied on by the ALJ as opposed to the much lengthier period indicated by the other portions of the record, over two

---

[7] Dr. Joseph's report on his 8 March 2010 visit with plaintiff is entitled "Initial Exam/Consult." Tr. 637. This heading does not necessarily contradict the existence of a prior treatment relationship with plaintiff since it could simply indicate the reestablishment of care with Dr. Joseph.

years; and the potential significance the length and intensity of a treatment relationship can have in evaluating a medical opinion. As stated in the Regulations:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i).

The court concludes that without an explanation by the ALJ of the evidence that plaintiff had a treating relationship with Dr. Joseph extending back to at least 2008 it cannot determine whether the ALJ's finding that Dr. Joseph rendered his decision after four therapy sessions is supported by substantial evidence.

Turning to the ALJ's finding that plaintiff was not taking mental health medication, it is an apparent reference to plaintiff's report to Dr. Joseph at their 26 April 2010 session that she was "[n]ot on any medications." Tr. 636. The finding is ambiguous. It is unclear whether it signifies that plaintiff did not then have a prescription for any medication or that she had a prescription but was not taking it. At her 8 March 2010 visit with Dr. Joseph, she reported that she had been hospitalized with dystonia due to Haldol and was told to stop all medications and see Dr. Joseph. Tr. 637. She reported that she had previously taken Seroquel, Lithium, Lamictal, Prozac, Wellbutrin, and Paxil. Tr. 637. He diagnosed her with bipolar disorder, then characterized by moderate depression, and prescribed a trial of the bipolar medication Tegretol. Tr. 638. It is not clear whether the prescription extended until the April session, although it was noted that she was to return in a month. Tr. 638.

Whether the ALJ's finding was intended to signify noncompliance with medication or nonprescription of it, the implication of the finding is that plaintiff's mental condition was not

sufficiently serious to warrant medication. In fact, though, at the April session, Dr. Joseph found that it was: he prescribed the antidepressant Seroquel for her. Tr. 636. Although he again diagnosed her with bipolar disorder, finding it was manifested most recently by moderate depression, he also noted that "[t]here are signs of severe depression." Tr. 636. Moreover, at the June session, Dr. Joseph doubled the dosage of Seroquel (Tr. 635). At the July session, he tripled the original dosage and also prescribed the antidepressant Klonopin (Tr. 634). Thus, assuming plaintiff was not prescribed mental health medication as of April, it represented a brief pause in her treatment regimen.

Thus, it is unclear precisely how and to what extent the ALJ's finding regarding plaintiff's medication status in April 2010 supports his complete rejection of Dr. Joseph's opinion. Given these ambiguities, the court cannot determine whether this finding is supported by substantial evidence as a basis for the ALJ's determination on Dr. Joseph's opinion.

The remaining question is whether the deficiencies in the ALJ's findings regarding the four therapy sessions and plaintiff's medication status in April 2010 require remand. The court finds that they do. The findings comprise two of the five bases cited by the ALJ for his determination on Dr. Joseph's opinion. The deficiencies also present the possibility of material underassessment by the ALJ of the severity of plaintiff's depression. Those concerns are heightened by the complete nature of the ALJ's rejection of Dr. Joseph's opinion and the potential significance a treating psychiatrist's opinion can have in the evaluation of a claimant's mental impairments. Moreover, the ALJ does not directly address the two grounds cited by Dr. Joseph for his determination of disability—"the fact that her severe mood swings were difficult to treat, and she was chronically suicidal"—even though there is considerable evidence supporting these findings. *See* Tr., *e.g.*, 792, 803, 907 (13 June 2012 statement of treating family

nurse practitioner that "plaintiff's medications are difficult to manage at times due to her history of gastric bypass surgery which interferes with the absorption of medications"). Thus, the court cannot say that the various deficiencies are harmless. *See, e.g., Hickman v. Colvin*, No. 4:12-CV-288-FL, 2014 WL 652545, at *7 (31 Jan. 2014) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009)), *mem. & recomm'n adopted by* 2014 WL 652545, at *1 (E.D.N.C. 19 Feb. 2014). It will therefore be recommended that the ALJ's decision be remanded because of the deficiencies with respect to the ALJ's determination on Dr. Joseph's opinion.

### B. ALJ's Assessment of Other Medical Evidence

The ALJ determined that plaintiff's allegations regarding the limiting effects of her depression were not fully credible. Tr. 162 ¶ 5; *see also* 160 ¶ 5. He summarized his assessment as follows:

> While the claimant has been assessed as suffering from depression, there is no indication in the medical records that she is as limited as she has alleged. While she reported that she does nothing but stays in her bedroom all day due to depression, she failed to ever report such significant limitations to any mental health professional. Additionally, the claimant typically failed to report any mental health issues or symptoms to any primary care or treating physicians, other than to her mental health counselor.

Tr. 162.

Plaintiff, of course, challenges the ALJ's interpretation of the medical records, as discussed above with respect to Dr. Joseph's opinion and below in various other respects. She also, though, disputes the ALJ's findings that she failed to report staying in her bedroom and her mental health problems generally as the ALJ asserts. Plaintiff's challenge is meritorious.

As to reporting staying in bed, the report on her 19 January 2012 admission to New Hanover Regional Medical Center for psychiatric treatment shows that she reported her staying in bed to attending psychiatrist Douglas A. Waldrep, M.D. The report states: "She has been

14

staying in her bed, she says most of the time for over the past year, which has increased over the past several weeks." Tr. 827. The discharge summary a day later similarly stated, "She has been in bed most of the time over the past year." Tr. 823. Although the ALJ described this hospitalization in his decision, he did not mention plaintiff's reporting this information. *See* Tr. 162 ¶ 5. Thus, the ALJ's finding that plaintiff "failed to *ever* report" staying in her bed all day "to *any* mental health professional" is factually incorrect. Tr. 162 (emphasis added).[8]

The ALJ's finding that plaintiff typically failed to report her mental health issues or symptoms to any primary care or treating physician other than her mental health counselor is of questionable accuracy. While the ALJ cites two instances in which plaintiff did fail to report her psychiatric conditions to non-mental health providers (*see* Tr. 162), there are instances in which she did. For example, she reported anxiety and depression to Pinehurst Surgical and Moore Regional Hospital in July and September 2010 in connection with abdominal procedures performed on her during those months. *See* Tr., *e.g.*, 667, 711, 735, 750, 760. In addition, the report on the 17 December 2010 examination of plaintiff at Wilmington Gastroenterology Associates states that she "complains of anxiety/panic, depression, difficulty sleeping, inability to concentrate and homicidal thoughts, denies suicidal thoughts." Tr. 782 (capitalization modified). Records from Batish for 2008 show that she repeatedly reported psychiatric symptoms to it, albeit prior to the alleged onset of disability. *See, e.g.*, 509-10 (31 July 2008), 513 (8 May 2008), 514-15 (30 Apr. 2008). In any event, during periods when she was receiving treatment from psychiatric providers, it is not altogether clear why her failure to report her

---

[8] The medical records reflect numerous other reports by plaintiff of fatigue at varying levels, including the following: "daily fatigue" on 21 May 2010 (Tr. 695); "daily fatigue" on 8 July 2010 (Tr. 694); "prominent fatigue" on 2 August 2010 (Tr. 756); fatigue on 19 September 2010 (Tr. 739); fatigue on 17 December 2010 (Tr. 780); "extreme fatigue and low energy" and "unable to carry out most activities of daily living without becoming very tired" on 30 March 2011 (Tr. 818); fatigue on 12 October 2011 (Tr. 774); and "not sleeping well and then sleeping during the day" and "wants to lie in the bed most of the day" on 24 February 2012 (Tr. 790). Admittedly not all such reports are clearly tied to plaintiff's depression.

psychiatric problems to providers not treating her for those problems would suggest that she did not have such problems.

To be proper, the reasons given by an ALJ for discrediting the allegations of a claimant must be supported by the evidence. *See* Soc. Sec. R. 96–7p, 1996 WL 374186, at *2 (2 July 1996). The reasons cited by the ALJ here, as set out in the summary of his credibility analysis, are not squarely supported by the evidence on the grounds discussed. These deficiencies preclude the court from concluding that the ALJ's credibility determination is supported by substantial evidence and based on proper legal standards. The ALJ's determination regarding plaintiff's credibility is manifestly a central factor in the evaluation of plaintiff's mental impairments, which are, of course, subjective in nature. Accordingly, the deficiencies with respect to the ALJ's credibility determination are not harmless. They not only reinforce the need for remand arising from the ALJ's determination on Dr. Joseph's opinion, but themselves comprise an independent ground for remand of this case.

## IV.  CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 22) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 30) for judgment be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation. In making this ruling, the court expresses no opinion on the weight to be accorded the evidence on plaintiff's mental impairments or otherwise. That is a matter left for determination by the Commissioner.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have until 6 January 2015 to file written

objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 23rd day of December 2014.

James E. Gates
United States Magistrate Judge